# FEBRUARY, 1937

WESTERN TELEPHONE CORPORATION OF TEXAS V.
JACK MCCANN ET AL.

No. 6770. Decided January 6, 1937.
Rehearing overruled February 3, 1937.
(99 S. W., 2d Series, 895.)

*W. B. Moss,* of Sinton, *John C. North,* of Corpus Christi,

*F. B. Buchanan, T. M. West,* and *Nat L. Hardy,* all of San Antonio, and *Sylvanus M. Thomas,* of Glenn Falls, N. Y., for plaintiff in error.

The outstanding fact in this case is that the immediate, moving and efficient cause of the death of Mrs. McCann was an act of God—a tremendous bolt of lightning—and that by the merest conjecture, without any evidence of substantial nature to support it, can any act of the ommission of the defendant be considered as contributing in any way to her death, and it is not sufficient as a matter of law to show any liability on the part of the telephone company. Texas Loan Agency v. Fleming, 92 Texas, 458, 49 S. W., 1039, 44 L. R. A., 279; Cousins v. W. O. W., 120 Texas, 107, 35 S. W. (2d) 696; Blass v. Virginia Pine Lbr. Co., 50 Fed (2d) 29; Barrett v. Virginian Ry. Co., 250 U. S., 473.

*J. C. Russell,* of Sinton, and *M. A. Childers,* of San Antonio, for defendants in error.

That the defendant telephone company in disconnecting a telephone from the residence of plaintiff had done so in such a negligent manner as to permit the lightning, which struck a pole of the main line some distance away, to follow the wire into the house of plaintiff and cause the death of his wife, who was standing upon the porch, near the alleged "dead end" of the wire. Standard Accident Ins. Co. v. Williams, 14 S. W. (2d) 1015; Texas Tel. & Tel. Co. v. Scott, 127 S. W., 587; West Lbr. Co. v. Goodrich, 223 S. W., 187, 26 R. C. L., 39.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This case involves a judgment for $15,000.00 in favor of defendants in error, Jack McCann and his five minor children, against plaintiff in error, Western Telephone Corporation of Texas. The judgment was for damages on account of the death of Mrs. Sarah McCann, the wife and mother of defendants in error. The Court of Civil Appeals affirmed the judgment of the district court. 69 S. W. (2d) 465. The parties will be designated as in the trial court.

Mrs. McCann was killed by a stroke of lightning August 26, 1932, while standing on the porch of her home near Taft, Texas, and during a rain and electrical storm. The McCann house was situated about 50 feet north of and facing a paved highway, running approximately east and west. Defendant owned a telephone line, which was strung on wooden poles 30 feet high and

about 180 feet apart. One of these poles, referred to as pole "X," was almost directly in front of the McCann house and about 36 feet distant from the front porch. The telephone line in front of the McCann house consisted of two wires, one a "through" wire, and the other a "local" wire. The through wire was attached to the poles by means of wooden brackets with a glass insulator at the end of the brackets. These brackets were on the south side of the poles next to the highway. The local wire was attached to the poles in the same way, the brackets being on the north side of the poles. The through wire was above the local wire, the two being separated about two feet. The local wire had formerly served two telephone instruments, one in the McCann house and the other in the Nelson house, some 400 feet west of the McCann house. At the time of the occurrence in question the local wire came to a dead end in the living room of the Nelson home. Both telephones had been disconnected a considerable time prior to the date Mrs. McCann was killed. The telephone instrument in the McCann house had been connected with the local wire by a "drop" wire extending from pole "X" in front of the house. It is undisputed that at the time of the occurrence in question the telephone instrument had been removed, and this drop wire terminated at a porcelain insulator spool spiked with an ordinary nail just under the eaves of the roof of the front porch, at the southwest corner of the porch. The spool was attached to the plate of the roof, which plate appears to have been a plank 2 inches thick by 10 or 12 inches wide and approximately 8 feet in length. This plate rested upon a wooden post at the southwest corner of the porch, which post was about 6 or 7 feet high and rested upon the floor just above a concrete block. The drop wire appears to have been fastened to the spool by being wrapped around same and its end was exposed. There was no ground wire or other connection between the drop wire and the ground. While the evidence sharply conflicted, yet it will be taken as a fact that the drop wire was in contact with the local wire or connected with it in some manner.

At the time Mrs. McCann was killed a severe bolt of lightning struck the telephone pole east of and 180 feet from the pole in front of the McCann house. The pole that was struck is referred to as pole "A." It was shattered to within about 2 feet of the ground. The through wire, that is the wire at or near the top of the pole, was severed. The local wire was not broken or burned, but was caused to sag. One end of the

severed wire was thrown upon a palm tree some distance from pole "A," and this palm tree later died. The first, second and third telephone poles east of the one which was destroyed were split on the south side; that is on the side where the through line was suspended. The telephone pole in front of the house was not injured, nor was there any sign of burning on the drop line or at its end where the current is alleged by plaintiffs to have left the wire. There was no disturbance whatever in the Nelson home where the local wire came to a dead end on a table in the living room. There was some testimony to the effect that the plate on the porch where the spool was attached by a nail was split. A photograph of this plate, showing the spool, was offered in evidence without objection, and it appears from the testimony that it showed the condition as it was shortly after Mrs. McCann's death. This photograph does not show anything more on the outside of the plate than a small crack some 12 inches in length. It is undisputed that the nail which attached the spool to the plate was in place and the spool appeared to have been practically undisturbed. There was some testimony to the effect that on the inside of the plate there was a crack in same which indicated that something had passed through the board. The porch post immediately under the spool was undisturbed. The proof does not show with exactness just where Mrs. McCann was standing when struck by the lightning, but she was somewhere near the west end of the porch, between the post at the corner of the porch and the door to the west room. So far as can be ascertained with any degree of certainty her head was perhaps within 3 or 4 feet of the porch plate at the place where the spool was attached, she being on the inside of the porch, while the spool was on the outside of the plate. Immediately after the stroke of lightning referred to Mrs. McCann was found on the ground just off the west end of the porch and was dead. Her small daughter, who had been standing between her and the door to the west room, was shocked and the screen door to the west room was damaged.

The theory of plaintiffs is that the bolt of lightning which struck pole "A" 180 feet east of the pole in front of the house, and which severed the through line, in some manner surcharged the local line with a current of electricity, which current coursed westward to pole "X" in front of the house, where it left the local wire and surcharged the drop wire, with which it coursed to the end of that wire at the spool; that it then left the end of the wire, going through the porch plate at somewhat of an

angle, then "jumped" to Mrs. McCann's head, and from her body passed through the little girl to the screen door. The alleged negligence on the part of defendant was the leaving of the drop wire connected with the local wire, with its end exposed, so situated that it might become surcharged with atmospheric electricity and in that way became an instrument of danger and destruction. The negligence of the defendant is admitted, and that question need not be discussed. Defendant in its application for writ of error has clearly defined and limited the question to be determined by the following statement:

"Plaintiff in error contends that under all evidence submitted in this case, and where there is any conflict in the evidence whatever, taking the evidence of the plaintiffs in the court below, that it is insufficient as a matter of law to show any liability on the part of the plaintiff in error for the death of Mrs. McCann. The outstanding fact in this case is that the immediate, moving and efficient cause of the death of Mrs. McCann was an act of God, a tremendous bolt of lightning, and that only by the merest conjecture, without any evidence of substantial nature to support it, can any act of omission of the plaintiff in error be considered as contributing in any way to her death."

It is admitted that Mrs. McCann was killed by lightning. It is claimed by plaintiff that the stroke of lightning which killed Mrs. McCann is the one which struck telephone pole "A." In order to sustain their contention they must of necessity show a direct connection between that stroke and the body of Mrs. McCann, and that connection must have been effectuated through defendant's wires, otherwise its negligence in leaving the drop wire dead ended at the porch had nothing to do with the death. No one of course could have seen or did see the lightning coursing from pole "A" to Mrs. McCann's body. The conclusion that it did so course must necessarily rest upon circumstances, presumptions or conjectures.

In 45 Corpus Juris, pages 1267 to 1271, it is stated that the cause of an injury, or the causal connection between an event and an injury, may be established by circumstances, in the absence of direct proof, but the degree of certainty required from such circumstantial proof is indicated by the following statement:

"* * * Upon the other hand, the causal connection between defendant's act or omission and the injury must not be left a matter of surmise or conjecture, and cannot be established by

evidence which is merely consistent with or indicates a mere possibility or probability thereof, as by evidence which merely shows two or more possible causes of the injury, for not all of which defendant is responsible; or which leaves it a matter of speculation or conjecture as between such causes; or which is equally consistent with the theory that the injury resulted from a cause for which defendant is not responsible; or which is equally balanced or permits of equally reasonable inferences or equally permissible conclusions as between a cause or causes for which defendant is responsible and a cause or causes for which he is not responsible; or where the injury may with equal fairness or probability or likelihood or as reasonably or with greater probability be attributed to a cause which will excuse defendant as to a cause which will subject him to liability."

Just here we may observe that on the trial of the case defendant offered the testimony of four specialists in the field of electricity. One of these was Professor S. W. Bass, a teacher of electrical engineering in the Texas College of Arts and Industries at Kingsville. Another was Professor William R. Work of the Carnegie Institute of Technology. Another was Professor Charles L. Kinsloe, head of the Department of Electrical Engineering of Pennsylvania State College. Still another was Professor E. J. Shimek, Electrical Engineer, and teacher of electricity in Rice Institute at Houston, Texas. These parties were not only graduate electrical engineers, but had made special study in the field of atmospheric electricity, or lightning, and were familiar with the works of recognized authorities in this field. Some of them had done extensive research work in connection with the laws and phenomena of lighting. They each testified to certain facts concerning lightning and its activity, in addition to giving their opinion concerning the cause of the death of Mrs. McCann. They each in substance concurred with Professor Kinsloe in the following statement:

"The popular conception of a 'lightning stroke' is that it consists of a simple, single passage of electricity, over a well defined and continuous path, from the clouds to earth. This idea is entirely wrong. The fact is that this natural phenomena is highly complex. This may be merely between clouds or to earth, and usually it is of rather limited severity. However, this primary discharge immediately releases subsequent or secondary discharges which may be, and very frequently are, of much greater severity than the original discharge. A single, isolated discharge, in all probability, never occurs. Moreover,

usually there is not a single discharge, through one definite path from clouds to earth. Ordinarily there are multiple paths to earth, which fact accounts for the common experience of more than one object being 'struck by lightning' at a given time and in the same general area, although the affected area may be quite large. Due to the great rapidity with which these discharges follow each other, they may appear to occur simultaneously. Not all of these discharges are of equal violence, nor do they all result in the same damage. Frequently the condition here described is visible to the naked eye, and so called 'forked lightning' is a familiar sight. Finally, it must not be assumed that during a discharge electricity will necessarily follow an all-metallic path where such a path is provided. It has been pointed out that under the abnormal conditions preceding a 'lightning stroke' air and other substances become good conductors of electricity, and frequently they offer less opposition to the passage of high frequency currents than do metallic substances. It is for this reason that lightning rods all too often fail to protect a barn or other building to which they are attached. Many instances are known where lightning will strike the roof of a building rather than a lightning rod installed on the same roof, and will go to ground through the building rather than through the metal wire which connected the rod to the ground."

These parties each gave it as his opinion that Mrs. McCann was struck and killed by a "side stroke," or independent discharge of lightning, which accompanied the main stroke that destroyed telephone pole "A." In view of this testimony, which was not disputed, plaintiffs' testimony fell far short of even tending to negative the idea that Mrs. McCann's death had been caused by some agency wholly independent of the negligence of defendant. In fact the testimony of the electrical experts practically excluded the idea that her death could have been caused in the manner claimed by plaintiffs. However, in view of the probable suggestion that the findings of the jury required that this testimony should all be disregarded (which we need not decide), we shall proceed to discuss the case upon the theory that plaintiffs, in the light of all facts and circumstances favorable to them, failed to prove a prima facie case of liability.

■ We do not find it necessary to adopt all that is said in the foregoing excerpt from Corpus Juris, because we have reached the conclusion that plaintiffs have wholly failed, except by resort to unauthorized speculation and assumption, to prove

that the stroke of lightning which struck telephone pole "A" was communicated to Mrs. McCann in the manner alleged by them. It was absolutely necessary for them to prove this in order that there might be found a causal relation between the negligence of defendant and the death of Mrs. McCann. We have numerous decisions to the effect that the causal connection between a defendant's negligence and a plaintiff's injury must not be left to surmise or conjecture, but we believe the most accurate rule to be applied in the present case is the one stated by the Supreme Court of Michigan in the case of Broudy v. Railway Company, 184 Mich., 330, 151 N. W., 575. In that case the facts upon which plaintiff relied to show liability, as well as the court's conclusion thereon, were briefly stated in the following language:

"It would serve no purpose of value to the profession to set out at large the testimony contained in the record upon this point. It is sufficient to say that, when given its greatest probative force, it falls short of showing affirmatively either one of two essentials: (1) That the defendant's current was the only deadly one upon any of the wires within the city of Ypsilanti at the time of the accident; or (2) that defendant's trolley wire actually came in contact with the city wire or any intermediate wire communicating with the city wire which carried the current a half mile distant to the corner of Spring and Bell streets, there to be communicated again to a telephone wire, which was down; thence to the plaintiff's intestate. The most that can be said of the testimony introduced on behalf of plaintiff is that it is possible that all these contingencies occurred. Under such circumstances, it is the duty of the court to direct a verdict for the defendant.

"It is elementary that the burden is upon the plaintiff to establish by competent evidence not only the negligence of the defendant, but also to establish a direct connection between such negligence and the injury. The plaintiff does not sustain such burden by showing that the injury may have resulted from the defendant's acts, but he must at least show that fact follows as a reasonable inference from the basic facts and circumstances. Whenever it is necessary to aid such proven basic facts and circumstances by conjecture, plaintiff must be held to have failed in his proof."

The same rule is likewise very forcefully stated in the case of Byerly v. Consolidated Light, Power & Ice Co., 130 Mo. App., 593, 109 S. W., 1065, in this language:

"* * * We sanction the contention of plaintiff that the causal connection need not be shown by direct and positive evidence, but may be shown by other facts and circumstances, and that in the consideration of a demurrer to the evidence every reasonable inference should be indulged in favor of the plaintiff. But the rule is elemental that the burden remains with plaintiff to the end of the case to establish by proof, not only the fact of the negligence averred, but also to show a direct connection between such negligence and the injury. Where the ultimate fact is not susceptible of direct proof, its existence must directly follow as a reasonable conclusion from its basic facts and circumstances, and it may be stated as an axiomatic rule that whenever court or jury are left by the evidence in a situation where, in order to find the ultimate fact alleged, *they must piece out the facts adduced with conjecture or supposition*, the plaintiff must be held to have failed in his proof. Where the evidence shows the injury might have been caused by the negligent act, but, in its aspect most favorable to plaintiff, is just as consistent with the inference that the injury might have been produced by another cause, to send the case to the jury would be to accord them the right to make an arbitrary choice between equally probable but unproved conclusions, and thus the verdict, if for the plaintiff, would be based not entirely on evidence, but in part on mere speculation and conjecture. This would mean a reversal of the rule imposing the burden of proof on the plaintiff, since the defendant, in order to prevent the jury from making him the victim of conjecture, would be forced to assume the burden of showing that his negligence did not produce the injury." (Emphasis ours).

A practical application of this rule has been made by the Court of Civil Appeals at Texarkana in two cases where there was an injury by lightning. The first case is that of Southwestern Telegraph & Telephone Co. v. Morris, 106 S. W., 426. In that case plaintiff's horse had been killed by lightning while apparently standing under a telephone wire which was suspended only a foot or two above his head. There was evidence showing that lightning had struck one or some of the telephone poles and had also struck a wire fence nearby. It was contended by plaintiff that the horse was killed by a current of electricity jumping from the sagged wire to the head of the horse. In denying liability, the court said:

"* * * Was the horse killed by electricity which came from the wires, or directly by a bolt of lightning from the clouds? If

the same bolt of lightning struck both the telephone line and the horse, but if the wire did not control the path of the bolt from the clouds to the earth so as to be the proximate cause of the bolt's striking the horse, the appellant as a matter of law would not be liable. *It is not sufficient that the wire was a possible consequence of conducting the lightning to the horse."* (Emphasis ours).

The other case is that of Lumpkin v. Texarkana Gas & Electric Company, 164 S. W., 435, where the facts were in some respects similar to the facts here. The court held in that case that the plaintiff had failed to prove a case of liability on the part of defendant.

■ In the case of Texas & N. O. Ry. Co. v. Warden, 125 Texas, 193, 78 S. W. (2d) 164, in an opinion adopted by the Supreme Court, the following holding was made, as shown by the syllabus:

"Facts may be established in civil cases by circumstantial evidence, but, for other proven facts to establish fact, main fact sought to be proved must follow as natural or very probable sequence from facts actually proven, and conclusion based on mere speculation from facts or circumstances proven is not justified."

By way of illustrating the proposition that the findings of the jury in this case must of necessity have rested upon several mere conjectures or assumptions we quote the following statement from the opinion of the Court of Civil Appeals, wherein is set forth the theory upon which it thought the judgment of the trial court could be upheld. Speaking of the bolt of lightning which struck telephone pole "A" the court said:

"* * * The next pole to the east, 180 feet away, was the one upon which the bolt of lightning vented its concentrated force, destroying it as if it were made of glass. The bolt generated the currents which wrought the death and destruction evidenced all about. It sought numerous outlets. One tentacle blasted a hole in the ground at the base of the pole, searching out and exposing an underground metal gas main. One clung to one end of the through wire to kill the palm tree, while another coursed eastward along the other end of the severed wire blasting down the full length of the next line pole 175 feet to the east, and the next, and the next, where its remaining force appears to have been exhausted, or found refuge, in the earth, 500 feet from the point of its origin. The remaining tentacle seized upon the local wire and followed it west to its intersec-

tion with the drop wire, which it seized in turn and followed downward to its dead end on the porch plate, blasting the latter, killing Mrs. McCann (the next nearest target), felling her daughter, partially shattering the adjacent door and screen."

The first apparent assumption we note is that a bolt of lightning venting its concentrated force upon a telephone pole will "generate currents." We do not think that even the expert testimony would authorize such an assumption. The next manifest assumption is that a bolt of lightning has numerous "tentacles." In the absence of the expert testimony there was nothing to suggest an inference of "tentacles." The expert testimony showed that instead of tentacles there were in fact "side strokes" which accompanied a bolt of lightning and which were calculated to strike in numerous places within the vicinity where the main bolt might strike. The next assumption is that one of the tentacles clung to one end of the through wire after it was severed until it was thrown in contact with the palm tree. The expert testimony showed that the duration of a current of electricity from a stroke of lightning is less than one thousandth of a second, or only a few millionths of a second. The next assumption (which is the one upon which the findings of the jury must absolutely depend) is that the "remaining tentacle seized upon the local wire and followed it west to its intersection with the drop wire, which it seized in turn and followed downward to its dead end at the porch plate." This not only involves the assumption that the tentacle would "seize upon the local wire," but the further assumption that when it followed the straight wire as far as pole "X" in front of the house it would entirely abandon or jump from that wire to the drop wire. This is evident from the fact that although the through wire went directly into the Nelson house, without the intervention of a drop wire, and dead ended on a table, no harm was done there at all. The further assumption is required that the current of electricity would follow each of these wires and leave the end at the porch without leaving any evidence of burn whatever. These assumptions make it necessary to further assume that after reaching the spool at the plate porch, instead of the current following the porch post to the concrete block and into the ground, it penetrated the plate somewhat as a bullet or other missle, left it on the inside, and "jumped" some 3 feet or more to Mrs. McCann's head.

The case of Sinkovich v. Bell Telephone Company, 286 Pa., 427, 133 Atl., 629, by the Supreme Court of Pennsylvania, is in

all essential particulars almost directly in point, and in that case the court held that even if defendant's expert testimony be disregarded plaintiff had failed to prove liability, and the case was reversed and remanded with instructions that judgment be entered for defendant. The following cases are also to some extent similar upon the facts and are authority for holding that plaintiffs were not entitled to recovery: Stecher v. Southwestern Bell Telephone Company, 132 Kan., 362, 295 Pac., 709; Illinois Power & Light Corporation v. Hurley, 30 Fed. (2d) 905.

This being a case depending to a great extent upon circumstantial evidence, if we give effect to the testimony of the experts, we find that the death of Mrs. McCann may be accounted for upon a theory much more probable than the one offered by plaintiffs. This being true, under many authorities, the plaintiffs failed to make a case. If the expert testimony be disregarded, we have a situation where it was undoubtedly necessary for plaintiffs to "piece out the facts adduced with conjectures or suggestions," and for this reason the finding of the jury to the effect that defendant's negligence was the proximate cause of Mrs. McCann's death is without legal evidence to support it.

The judgments of the Court of Civil Appeals and of the trial court are reversed, and the cause is remanded.

Opinion adopted by the Supreme Court January 6, 1937.

Rehearing overruled February 3, 1937.