Sperow v. Carter

*Paul J. Smith* and *George M. Houck*, for plaintiff.
*Landis & McIntosh*, for defendant.

JACOBS, J., August 30, 1956.—The above case was tried before a jury and the writer of this opinion during the week of common pleas trials beginning February 13, 1956. The trial resulted in a verdict for defendant. A motion for a new trial was filed by plaintiff and the motion was argued before this court en banc on June 19, 1956.

In plaintiff's motion for a new trial she assigns six reasons why the new trial should be granted. The first four reasons are the catch-all reasons usually given in asking for a new trial, namely: That the verdict was against the law, against the evidence, against the weight of the evidence and against the charge of the court. In her argument, plaintiff mentions only one of these objections, namely: That the verdict was against the weight of the evidence, and does not offer any argument in support of the other three reasons heretofore listed. The court will, therefore, treat this as the only problem raised by plaintiff in her first four listed reasons. The fifth reason assigned by plaintiff is that the trial judge erred in refusing to permit Ralph R. Baughman to testify as an expert witness. As her sixth reason plaintiff claims that the trial judge erred in refusing to permit J. E. Sacriste to testify as an expert witness and give his opinion as to the cause of the fire involved in the matter on trial.

Plaintiff owned a house at 100 South Second Street, Wormleysburg, Cumberland County, on November 16,

1954. A fire occurred on that date causing $3,541.49 damage to plaintiff's house. On the date of the fire the house was rented to Thomas H. Mumma. At about 7 p.m. on November 16, 1954, it became evident that the house was on fire. Plaintiff noticed sparks coming out of the side of the chimney near a wooden sill resting on top of the stone cellar wall. Mumma had not been living in the house up until that time but had been in the process of making repairs for a period of several months.

Mumma had a furnace installed in the house with plaintiff's consent. In order to install the furnace he had the chimney extended downward from the middle of the first floor. Defendant, a general contractor with 11 years' experience, made the installation of the chimney. The chimney was constructed of building blocks with a clay flue liner. In order to install the chimney defendant cut out the stone wall for a distance of approximately two feet from its top downward. On top of the stone wall was a large wooden sill on which the house rested. In order to pass this wooden sill with the extension of the chimney downward it was necessary to offset the cinder blocks surrounding the flue liner. A portion of one of the cinder blocks rested on the wooden sill. The tenant, who was papering and painting the house, had built a number of wood fires in the furnace prior to the time he had coal put in. Several days before the fire occurred he had started a coal fire in the furnace.

On the day of the fire, the furnace was banked off and there was no draft turned on. The tenant was the first person to enter the cellar from the outside. The inside of the sill and the ends of four rafters near the base of the chimney were on fire. The fire had also burned up to the second floor between the weatherboarding and the studding and then proceeded across the second floor under the floors of two bedrooms and

actually burned the whole way across the second floor. The firemen, who had come very promptly, removed the smokepipe from the furnace to the chimney. This was done by the fire chief, Ralph R. Baughman.

. When the pipe was removed it was noticed that there were openings on each side between the flue liner and the cinder block of the chimney. The openings were several inches long and a fraction of an inch wide. No repairs had ever been made to the old portion of the chimney nor had the same been cleaned since 1913. The wiring in the house had been installed in 1915. The firemen arrived shortly after the fire started and found that the fire had broken through about halfway up between the basement and the second story. Defendant and his witnesses testified that all of the cinder blocks were mortared together. Defendant himself observed the crevices between the cinder block and the flue liner about 9 on the evening of the fire, but he and the man who had actually repaired the chimney testified that these crevices were filled with mortar when the chimney was finished. The man who built the chimney testified that he offset the fourth cinder block one half or three fourths of an inch in order to get past the wooden sill. He testified that that was the maximum setoff possible because of the limited play of the flue liner inside the blocks.

The work on the chimney was completed before the furnace was installed. The man who installed the furnace testified that he examined the base of the chimney and found no crevices at the time that he installed the furnace pipe. Defendant's witnesses testified that the cellar, at the time they installed the furnace, was cluttered with old lumber, bottles and cans and that the wiring above the furnace and at the foot of the basement steps was frayed. Aside from the fact that the crevices were mortared at the time the chimney was installed, defendant stated that the fire could not have

gone up between the flue and the cinder blocks because the mortar placed between each cinder block was squeezed out and filled up the space between the flue and the blocks.

The questions presented for the court's consideration by the motion for a new trial are as follows:

1. Was the verdict against the weight of the evidence?

2. Did the court err in refusing to permit Fire Chief Ralph R. Baughman to testify as an expert witness?

3. Did the court err in refusing to permit J. E. Sacriste to give his opinion as to the cause of the particular fire in issue?

Plaintiff has phrased her statement of the third question involved as being the refusal of the court to permit J. E. Sacriste to testify as an expert witness. Such a statement of the third question is incorrect. Mr. Sacriste was admitted by defendant to be an expert in the investigation of fires. He was permitted to testify as an expert and gave his opinion as to the possible effect of the unsealed crevices which he discovered on the day he made his examination. All that the trial judge did on his ruling was to hold that the witness could not give his opinion as to the cause of "this specific fire".

It is true that a new trial will be granted where the verdict is clearly against the weight of the evidence. However, in order to warrant the granting of a new trial on the ground that the verdict is against the weight of the evidence, the preponderance of evidence must be clear and decisive: Standard Pennsylvania Practice, vol. 6, p. 319. Inasmuch as the jury has found in favor of defendant, their findings of facts have been in his favor and the court must, therefore, view the testimony in the light most favorable to defendant, and defendant must be given the benefit of

every inference and deduction reasonably to be made therefrom: Rubin Brothers Waste Co. v Standard Equipment Co., 368 Pa. 61.

Defendant has testified that he was a building contractor with 11 years' experience. He and his witnesses testified that the chimney when it was installed was properly sealed at the bottom. Defendant explains the absence of sealer after the fire by suggesting that it must have fallen out when the pipe was removed. Defendant also claimed that sparks and fire could not pass up through the crevices at the bottom of the chimney because the mortar between the cinder blocks was squeezed out in the process of building and fell down between the flue liner and the cinder blocks and sealed off that area. It was brought out on cross-examination and by some of defendant's witnesses that the wiring in the house was old and some of it was frayed. There is testimony to the effect that the cellar was filled with old lumber, bottles and paint cans.

Treating this testimony in the light most favorable to defendant, there is nothing to show that defendant was in any way negligent. He had constructed a chimney according to normal building practices. He had sealed off the crevices at the bottom of the chimney. This was a direct answer to plaintiff's contention that the chimney was constructed faultily in this respect. In fact, the whole theory on which plaintiff attempted to recover depended on the existence of the crevices. Evidently the jury preferred to believe defendant. Believing defendant and his witnesses, as the jury obviously did, there was substantial evidence present on which to base a finding in favor of defendant. There was no clear and decisive preponderance of evidence showing defendant to be negligent.

A number of conflicts of testimony are present in this case, particularly in reference to the flashing of the base of the chimney. Plaintiff's testimony in re-

gard to the crevices refers to a time after the fire. Defendant's testimony in regard to the crevices and the fact that they were flashed refers to a time prior to the occurrence of the fire. The jury was, of course, left with the problem of reconciling this apparent conflict, which they did in favor of defendant. A new trial will not be granted because of a mere conflict of testimony: Decker v. Kulesza, 369 Pa. 259. In this regard the statement at the end of Reithof v. Pittsburgh Railways Company, 361 Pa. 489, is applicable to the case at hand.

"It is well settled that a new trial will not ordinarily be granted on the ground that the verdict is against the weight of the evidence where the evidence is conflicting and the jury might have found for either party. In the present case, as stated by the court below, 'the jury could have decided the case either way; but the testimony on the part of the plaintiff (defendant), if believed by the jury, was more than sufficient to sustain the verdict arrived at. On this feature of [appellant's] motion there is nothing involved except the credibility of witnesses, and that matter has been disposed of by the verdict of the jury.' "

In this case, as in all cases, the court charged the jury to the effect that the burden was on plaintiff to make out her case by a preponderance of the evidence. The burden was not on defendant to prove that he had not been negligent. The burden of proving defendant's negligence was on plaintiff, and the mere fact that the fire occurred would not justify the jury in inferring that it was caused by the negligence of defendant. It is apparent that the jury must have concluded that plaintiff had not met this burden. Plaintiff's evidence does not clearly fix the cause of the fire nor does it clearly show that any action of defendant contributed to the cause. The jury was compelled to draw a number of inferences before it could find de-

fendant guilty of negligence. Certainly the evidence of defendant's negligence, if any, was not so clear that a verdict in favor of defendant would tend to shock the court's conscience.

Later in this opinion the court will discuss the necessity for opinion evidence in this case. Without, however, conceding that opinion evidence was proper in this case, the court will now discuss the qualifications of Mr. Baughman to testify as an expert.

It is to be noted that counsel for plaintiff in his offer stated that Mr. Baughman "is qualified to give an opinion of the cause of this fire." The court sustained defendant's objection to this offer and no further offer in regard to Mr. Baughman was made. For reasons hereinafter set forth, even if Mr. Baughman had been an acknowledged expert, he might not have been qualified to testify as to the cause of the fire in question. Plaintiff in her brief treats the ruling of the court as if the court had held that Mr. Baughman was not an expert. The court is willing to discuss Mr. Baughman's qualifications as an expert witness.

Was Mr. Baughman qualified to give an opinion as to the cause of the fire? "An expert is a person experienced, trained, skilled in some particular business or subject. An expert witness is one who because of the possession of knowledge not within ordinary reach is specially qualified to speak upon the subject to which his attention is called. . . . Many persons may know something about a given question and be competent as witnesses to tell what they know. A few may have an intimate, an exceptional, knowledge and be entitled to speak as expert witnesses": Struthers v. The Philadelphia & Delaware County Railroad Company, 174 Pa. 291. As is further pointed out in the same case, the knowledge relied on to give the testimony of the witness the value of that of an expert must relate to the subject under investigation.

Ralph R. Baughman was the fire chief of the Borough of Wormleysburg. He had been such for five years and the fire involved in the case before the court was the first fire that he had had in Wormleysburg involving any property damage. He stated that he had been fighting fires since 1936. It should be pointed out that being fire chief of Wormleysburg is a parttime job and that Mr. Baughman was regularly employed as an airbrake car repairman on the Pennsylvania Railroad. When asked about his schooling concerning fires he said: "We had our own schooling at various times. We had them here in Cumberland County; at Lewistown. Other than that it is all . . . you learn more by actual fires than by schooling."

He was then asked if he made any reference to books on fires, to which the witness replied: "Well, we read them but we don't pay that much attention. You have to have an actual fire to learn." He stated that he attended two or three schools which ran usually for a week or four or five days. He had fought about 100 fires since 1936. From 1942 to 1950 he was foreman of a fire company in Steelton, during which time the local fire chief or his assistants reported on the fire. It was his duty to report on the fires in Wormleysburg, but, as pointed out heretofore, this was the first fire he had had with any property damage.

The questioning on Mr. Baughman's qualifications as conducted on cross-examination ran as follows:

"Q. Do they give you any special training on determining where a fire originates?

"A. No.

"Q. Do they give you any special training on determining the cause of a fire?

"A. They try to explain it to you; what to look for and different things.

"Q. When did you last attend school before that?

"A. I can't recall.

"Q. Has most of the schooling you have had been fire fighting? Has most of the training you received been on how to fight a fire?

"A. That is right."

Almost all of the witness's experience had been in fighting fires. Nowhere in his official experience had he been required to determine the cause of a fire until the present fire. His schooling on determining origin and cases was very slight and had made very little impression on the witness.

Keeping in mind that the witness was offered as an expert on the cause of fires and not on fire fighting, the court was, at the time of the trial, and is now, convinced that the witness was not an expert for the purpose for which he was offered.

The case of Sinkovich v. Bell Telephone Company of Pennsylvania, 286 Pa. 427, gives some value as a precedent. In that case a witness was offered as an expert to express his opinion as to the effects of lightning. The witness had done electric wiring, outside transmissions, some telephone and powerhouse work. He had been employed by two electric companies and was in the electric supply business on his own account. He did not know the technical terms of electrical science. He had heard a few lectures given by employes of one of the companies for which he worked. He could not recall the name of any book on the subject which he had read. He had two sets of books relating to it, but could not remember the names of the books nor the authors. As the court said, on page 434: "It is obvious from the foregoing review of this witness's qualifications that he was not an expert, that all he knew on the subject of electricity and its actions was what he had learned from his own experience as a workman and that his expressions of opinions on the highly scientific subjects, as to which he was inter-

rogated and which went to the heart of the case, were valueless and that nothing could with certainty or safety be predicated on them."

While this court does not believe that the obvious lack of qualifications which were present in the Sinkovich case are present in the case at hand, the same general lack of educational qualifications are present. In addition, Mr. Baughman has had just about as much practical experience in determining the cause of a fire as the witness in the Sinkovich case had had in studying the effects of lightning.

As has been pointed out many times by our appellate courts, it is a question for the discretion of the trial judge whether a witness has shown himself sufficiently qualified to testify: Stevenson v. East Deer Township, 379 Pa. 103. Furthermore, where the qualifications of a witness are questionable, it is the duty of counsel offering him to satisfy the court as to his qualifications. This court feels that counsel for plaintiff has not met the required proof and that therefore this court did not err in refusing to allow Ralph R. Baughman to testify as an expert witness as to the cause of the fire: See Groff v. Groff, 209 Pa. 603.

Although there are numerous reasons why Mr. Sacriste could not give his opinion as to the cause of this particular fire, there are two basic and controlling reasons. In the first place, the subject under investigation was not one requiring expert testimony, and secondly, the condition of the chimney at the time of the fire was in dispute.

In Graham v. Pennsylvania Company, 139 Pa. 149, 159, in regard to permitting witnesses to give their opinions, the court said:

"But, as necessity is the ground of admissibility, the moment the necessity ceases the exception to the general rule that requires of a witness facts and not opin-

ions ceases also. Hence, whenever the circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, opinions of witnesses, expert or other, are not admissible."

In the Graham case witnesses were not permitted to give their opinions as to the dangerous condition existing because of a raised portion of a platform in a railroad station.

In Burton v. Horn and Hardart Baking Company, 371 Pa. 60, expert testimony was held inadmissible to show that the type step used was dangerous when wet, the court stating as follows:

"Expert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance of one claiming to possess special knowledge upon the subject."

Was there any necessity for expert opinions about the fire in Mrs. Sperow's house? This court thinks that such opinions were not required. When the facts were presented to the jury, there were no strange or unusual conditions requiring expert explanation. All men are familiar with the fact that a fire goes upward and that if holes exist in a chimney or flue liner sparks and flames can go out and probably will go out through those holes. The jury was as well able to judge the effect of any alleged defects in the construction of the chimney as was Mr. Sacriste.

"Where facts are admitted or proven by evidence which is not conflicting, an expert may give his opinion founded on that testimony . . . but, where there is a conflict, he must base his opinion on facts within his knowledge or on an assumed state of facts or on the testimony given in behalf of one of the parties and made known to him and which, for the purpose of his opinion, he assumes to be true: . . . To permit him

to base his opinion on contradictory evidence, or on the whole case as adduced by both plaintiff and defendant, would permit him to usurp the functions of the jury and determine the case on its facts": Wissinger v. Valley Smokeless Coal Co., 271 Pa. 566, 571; Henry, Pennsylvania Evidence, §561. (4th Ed.)

In Sweeney v. Blue Anchor Beverage Co., 325 Pa. 216, an expert witness was not permitted to give his opinion as to the cause of the breaking of a bottle. The court pointed out that the question given to the witness included no fact as to the force with which the bottle was toppled over. The opinion evidence was excluded in the following words:

"This omission was not due to any unfairness on the part of the questioner, for there was no evidence produced as to the degree of this force and apparently none available. In the absence of such evidence on this undoubted factor in the occurrence, the court was justified in refusing to permit the witness to give his opinion as to the cause 'of the breaking of the bottle'. For him to have answered: 'The weakness of the glass or the excessiveness of the pressure,' would have been misleading to the jury . . . and unfair to the defendant. . . . 'No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture'."

In the instant case there was a definite dispute as to the condition of the chimney at the time of the fire. The witnesses for plaintiff and defendant himself admitted that the crevices appeared at the base of the chimney after the pipe had been taken down following the fire. However, defendant and his witnesses stoutly maintained that the crevices had been flashed or filled with concrete at the time the chimney was completed and the piping from the furnace installed. Therefore, this was a fact in dispute which had to be resolved by the jury. To have permitted Mr. Sacriste to base his

opinion on contradictory evidence and to give his opinion as to the cause of the fire would have certainly made him perform the jury's function because it was necessary for him to resolve this factual dispute in order to give his opinion. The court did permit Mr. Sacriste to give his expert opinion based on the facts within his knowledge, namely, what the result could be if the chimney was in the condition that it was when he discovered it.

On page 75 of the testimony, plaintiff's counsel asked Mr. Sacriste: "Q. What would be the effect of holes such as you have described in the liner?" To which Mr. Sacriste replied: "Well, where a liner wasn't sealed off, there is always a possibility of hot gases or sparks getting in between the liner and the cinder block and coming out through the cracks or the mortar joints of the cinder block if they are not properly joined. Also mortar will not stand the heat and even though a joint is properly joined it will in time crack out and crumble from the heat coming out from the liner and the cinder block. It can also, if we consider a chimney built partly on a wooden sill, it might also be possible for hot gas and sparks to get to this wooden sill and ignite the sill."

It should be noted that there was no testimony to show that a joint was not properly joined or that much heat had ever been applied to the chimney. It is obvious that this expert witness was permitted to go very far in giving his opinion on a set of facts all of which were not proven by the testimony of any witness. It is difficult to see what complaint plaintiff can have over the refusal of the court to let her expert witness answer the ultimate factual question which was submitted to the jury. Had the verdict gone the other way, it is possible that defendant would have had grounds to object to the admission of Mr. Sacriste's expert opinion.

The fire in question occurred about 7 p.m. on November 16, 1954. Mr. Sacriste's examination of the scene was made the afternoon of November 17. The court feels that his examination was too remote from the time of the fire to permit him to give his expert opinion as to the cause of the fire. This the court feels is an additional reason why it was proper to exclude his expert opinion on this one point. See Commonwealth v. Greenburg, 143 Pa. Superior Ct. 203.

The recent case of Commonwealth v. Nasuti, 385 Pa. 436, an arson case in which expert witnesses were permitted to give their opinion as to the incendiary origin of the fire, is clearly distinguishable from this case. In the Nasuti case, there was no dispute as to the facts. One expert witness arrived while the fire was still in progress and the other expert witness made his examination about seven hours after the fire. As pointed out by the court in that case: "Expert testimony is admissible in all cases, civil and criminal alike, when it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience."

The testimony in the Nasuti case involved the burning of inflammable liquids and how such burning differs from the burning of other ordinary materials. The court went on to say: "In short, while in some arson cases the testimony may not need any supplementation by expert opinion, other such cases clearly justify its admission."

It was obvious in the Nasuti case that the intensity and unusual nature of the burning justified the use of expert opinion to explain it. In the case before this court no unusual facts requiring explanation by experts appear.

And now, August 30, 1956, at 2:30 p.m., for the reasons above set forth, plaintiff's motion for a new trial is refused. An exception is noted for plaintiff.