HERBERT CAUDLE, Respondent, v. J. W. KIRK-BRIDE, Appellant.

Kansas City Court of Appeals, March 5, 1906.

1. MASTER AND SERVANT: Safe Appliances: Cause of Injury: Duty of Servant: Evidence: Jury. Where the injury complained of may have resulted from either of several causes ·for only one of which the master is liable, the servant must show with reasonable certainty that that cause produced the injury; and where the evidence leaves the cause in doubt and uncertainty there is no case for the jury.

2. ———: ———: Negligence: Fellow-Servant. On the evidence it appears that the only negligence is that of the plaintiff and his fellow-servant in not sending out the defective implement for repairs.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

REVERSED.

*A. E. Spencer* for appellant.

(1) It was properly the duty of the workmen to watch the bars, and note the effect of use upon them, and when one needed fixing to send it out for that purpose. The master was not bound to stand by and constantly observe the effect of use upon these wooden plugs. 2 Labatt, Master and Servant (1 Ed.), sec. 621, p. 1816;

Herbert v. Ferry Co., 107 Mo. App. 287; Jackson v. Mining Co., 106 Mo. App. 448; Bowen v. Railroad, 95 Mo. 277; Zellars v. Water & Light Co., 92 Mo. App. 126, 127; Judson v. Village, 116 N. Y. 655, 22 N. E. 555; Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952; McGee v. Cordage Co., 139 Mass. 445, 1 N. E. 745; Quigley v. Levering, 167 N. Y. 58, 54 L. R. A. 62, 60 N. E. 276; McKinnon v. Norcross, 148 Mass. 533, 3 L. R. A. 320, 20 N. E. 183. (2) Plaintiff and Whittaker had their choice of using the tamping bar with the plug worn by their use, or, if they desired, of sending this bar out and having a new plug put in it. They voluntarily used the worn bar, and therefore plaintiff cannot recover. They knew the condition of the worn bar, while in the very nature of things defendant could not know that condition. If there was any negligence in the use of the bar, it was of the plaintiff and his fellow-servant, and not of the defendant. Whaley v. Coleman, 113 Mo. App. 594, 88 S. W. 119; Moore v. Railroad, 146 Mo. 572; Black v. Railroad, 172 Mo. 177; Lucey v. Oil Co., 129 Mo. 32; Hurst v. Railroad, 163 Mo. 309; Caldwell v. Railroad, 181 Mo. 455; Montgomery v. Railroad, 109 Mo. App. 88. (3) There can be no recovery because the evidence fails to show the cause of the injury, and leaves it a matter of mere speculation. Where an injury may have resulted from one of two causes, for one of which the master is liable, plaintiff must show with reasonable certainty that the cause for which defendant is liable produced the injury. Shore v. Bridge Co., 111 Mo. App. 278, 86 S. W. 905; Browning v. Railroad, 106 Mo. App. 729; Goransson v. Mfg. Co., 186 Mo. 300; Purcell v. Shoe Co., 187 Mo. 276; Trigg v. Land & Lumber Co., 187 Mo. 227.

*Shannon & Shannon* for respondent.

(1) While the plaintiff and fellow-servant had been furnished with proper tamping bars in the first instance,

it is true, as appellant states, that the "use of these bars by the workmen, in the discharge of their duty, necessarily changed from time to time the condition of the bars, particularly by constantly wearing away the plugs in the end of the bars." This imposed upon the appellant the duty to adopt such a system of inspection as would enable him to discover when the bars became dangerous on account of the plugs being too much worn. Robbins v. Mining Co., 105 Mo. App. 78. (2) The copious quotations made by appellant from Cregan v. Marston, 126 N. Y. 568; McGee v. Cordage Co., 139 Mass. 445; Quigley v. Levering, 167 N. Y. 58, and McKinnon v. Narcross, 148 Mass. 533, are not applicable to this case. (3) Under these circumstances, the rule that if the appliance was not in a reasonably safe condition, the master would be chargeable with negligence, and the servant would not be chargeable with contributory negligence, unless the danger from the use of the tool was so apparent that no ordinarily prudent workman would use it, would apply. Minnier v. Railroad, 167 Mo. 113; Booth v. Railroad, 76 Mo. App. 516; Smith v. Coal Co., 75 Mo. App. 177; O'Mellia v. Railroad, 115 Mo. 205; Hamilton v. Mining Co., 108 Mo. 364 (l. c. 374); Huhn v. Railroad, 92 Mo. 440; Conroy v. Iron Works, 62 Mo. 35; Holloran v. Iron & Foundry Co., 133 Mo. 476; Soeder v. Railroad, 100 Mo. 673; Henderson v. Kansas City, 177 Mo. 477; Holmes v. Brandenbaugh, 172 Mo. 53; Connoly v. Printing Co., 166 Mo. 463. (4) It cannot fairly be said that plaintiff and Whittaker had the choice of using the tamping bar with the plug worn by use, or of sending it out and having a new plug put in. The evidence tends strongly to show, and may be said to conclusively show, in view of the finding of the jury and the instructions that plaintiff and Whittaker while working on the night shift were expected to use the plug in the condition in which it was left by the day shift, the wear being so gradual that there was practically no difference between the condition in which it would be left by the day shift

and the condition in which it would be left by the night shift. Therefore, the authorities cited by appellant do not apply. (5) This case is not analogous to the cases in which it is held that where an injury may have happened from either one of two causes, for one of which the master is liable and for the other of which the master is not liable, plaintiff cannot recover. In this case the explosion occurred either because the wooden plug in the end of the tamping bar penetrated the "shot" and exploded the cap, or because the wooden plug penetrated the "shot" until the iron portion of the tamping bar reached the powder and exploded the same. In either case appellant was liable, because neither event could have happened if the plug had not been worn to a point.

ELLISON, J.—The plaintiff was injured by the explosion of powder used in blasting in a mine. He charges that the defendant, as master, furnished him an unsafe appliance for tamping the powder in the hole preparatory to a blast. He recovered judgment in the circuit court.

The evidence shows that plaintiff and one Whittaker were fellow-servants working at night in defendant's mine. That a hole had been drilled and they were engaged in what was called "squib" blasting at the bottom of the hole; the object being to make a "pocket" or larger space at the bottom so that it would receive a sufficient charge of explosive to make an effective blast. The implement, or appliance, which is alleged to have been unsafe was a "tamping bar," made of ordinary three-quarter-inch iron gaspipe, eleven or twelve feet long, with a wooden plug driven in one end and protruding out about twelve inches; and the only complaint is that this plug was permitted to become worn too small at the end. The hole had been drilled to a depth of nearly eleven feet and some squibs had been exploded at the bottom. Whittaker then began to "load

the hole" with "sticks of powder" for the main blast. After getting in several sticks, the hole became partially stopped by some obstruction about five feet from the top, which prevented further loading at the bottom. After endeavoring for some time to remove the obstruction, Whittaker concluded to blow it out by putting a stick of powder down below the obstruction and explode it with a cap and fuse. He and the plaintiff fixed a cap and fuse in a stick of powder and plaintiff inserted it in the mouth of the hole and Whittaker commenced to push it down, on by the obstruction, with the tamping bar and as he was doing this, plaintiff lighted the fuse. Plaintiff said to Whittaker as he was pushing at the powder, "It isn't back yet;" when Whittaker answered, "I know it isn't; get in, you son of a bitch," at the same time giving it "a shove," and the explosion immediately followed; killing Whittaker and inflicting injuries upon plaintiff, for which he brought this action.

The day shift at this mine had a mine foreman, but the night shift had none. It was the duty of the foreman to inspect the tools and to see that they were kept in reasonable state of repair. The tamping bar in question was used by the day shift and left in the mine to be used by the night shift. The evidence shows, as already stated, that the wooden plug stuck out of the end of the iron bar twelve inches when first driven in, but it also appeared that these plugs would be used until half worn off, sometimes a little more, being thus reduced in length to between five and six inches. They would then be taken out and a new one driven in. Plaintiff stated in his testimony that if the plug came out or was broken off, Whittaker, his fellow-servant, would send it out, when a new one would immediately be put in. He gave further testimony from which it would seem to have been the duty of one or the other to send it out when worn too short.

The stick of powder, which they were trying to push by the obstruction, was about one inch and a quarter

in diameter. Its length does not appear to be stated, but it was wrapped in oil paper folded over at the end and the cap, to which the fuse was attached, was at the lower end. The hole was made with a two-inch drill for the first two feet and a smaller drill every two feet thereafter, so that at the point of obstruction it was smaller than at the mouth.

The thing most certainly appearing from the record presented is that plaintiff did not make out his case. Everything in the case vital to his right to recover is involved in doubt, conjecture and uncertainty. He himself stated he did not know what caused the explosion. His charge in the petition is that it was caused by the unsafe wooden plug in the end of the tamping bar. Of the several means, which *might* have caused the explosion, we regard that as the least likely. It may have been caused by Whittaker using the reverse end of the tamping bar, as he was seen to be using that end when last noticed. Plaintiff stated that he did not know which end was being used, nor what caused the explosion. It may have been caused by the fuse exploding the cap; or, it may be, that the powder being lodged against the obstruction, the cap probably resting against or near to it, was exploded by the last, evidently impatient, push which Whittaker gave when he made the exclamation above noted.

But the wooden plug in the end of the tamping bar, to which plaintiff's petition ties his case, could scarcely, by possibility, have been the cause. Possibility is perhaps too broad a word; but when it is considered how near the stick of powder itself came to filling the hole and the size of the wooden plug, which plaintiff gave as great as his forefinger, the thick, heavy oil paper folded over at the end, we are not very far out of the way in using so extreme a word.

When the injury, of which complaint is made, may have resulted from either of several causes, for only one

117 App.—27

of which the party sued is liable, it is for the complaint-
ant to show with reasonable certainty that the cause for
which the party is liable produced the result.    [Warner
v. Railroad, 178 Mo. 125, 134.]

It is not necessary to enter upon a discussion of
further points made against the plaintiff's case; but we
will add that we believe, with defendant, that whatever
of negligence finds place in the case was the negligence
of plaintiff and his fellow-servant Whittaker, in not
sending out the bar for a new plug if the one then in
it was too dangerous to use.    The evidence as given by
plaintiff himself shows, when properly analyzed, that
such should have been done.    [Livengood v. Lead & Zinc
Co., 179 Mo. 229.]

The judgment is reversed.    All concur.