GULF, C. & S. F. RY. CO. v. DAVIS et ux.

(Court of Civil Appeals of Texas. Ft. Worth. June 28, 1913. Rehearing Denied Nov. 15, 1913.)

1. CARRIERS (§ 316*)—CARRIAGE OF PASSENGERS—PRESUMPTION—RES IPSA LOQUITUR.

In an action by a female passenger who fell while alighting from a railroad train owing to her dress catching upon something, where there was no showing that it caught on any screw or projection upon the platform, the doctrine of res ipsa loquitur cannot be relied on to raise an inference of negligence, because it would be basing inference on inference; the first inference being that by reason of the fall there must have been some obstruction, and the second that the defendant was negligent in failing to discover and remove the projection.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1261, 1262, 1283, 1285–1294; Dec. Dig. § 316.*]

2. CARRIERS (§ 318*)—CARRIAGE OF PASSENGERS—ACTIONS.

In an action against a railway company for injuries received by a passenger who fell while alighting from a car, a judgment in favor of the passenger cannot be upheld, where the testimony showed that the accident was as reasonably attributable to a nonactionable cause as to the company's negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

3. CARRIERS (§ 316*)—CARRIAGE OF PASSENGERS—DUTY OF CARE.

While it is the duty of a railroad company to exercise a high degree of care to furnish and maintain suitable cars and platforms upon which passengers may move with safety, it is not an insurer in this respect, and one injured upon a car platform has the burden of proving the company's negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1261, 1262, 1283, 1285–1294; Dec. Dig. § 316.*]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by L. C. Davis and wife against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

See, also, 139 S. W. 674.

Terry, Cavin & Mills, of Galveston, Brown & Lockett, of Cleburne, and Lee & Lomax, of Ft. Worth, for appellant. J. B. Haynes, W. Poindexter, and Walker & Baker, all of Cleburne, for appellees.

CONNER, C. J. This appeal is from a judgment in appellees' favor for the sum of $12,500 as damages for personal injuries alleged to have been received by Mrs. Davis while she was a passenger on one of appellant's trains on the 16th day of January, 1909. A number of assignments of error relating to the rulings of the court on the instruction and rejection of evidence and to special charges given and refused have been presented, but, in the view that we have taken of the case, it will not be necessary for us to determine them. The vital question, as we conclude, is whether there is any evidence in support of the issue of negligence upon which the case was submitted.

Several grounds of negligence were alleged. All but one, however, were excluded from the consideration of the jury by the court's charge, and of this no complaint is made, so that in our statement of the case we will confine ourselves to the issue of negligence submitted. It was alleged, in substance, that on the evening of the day stated Mrs. L. C. Davis took passage at Cleburne, Tex., upon one of appellant's passenger trains for the purpose of being transported to her home in Alvarado. Mrs. Davis without dispute paid the customary railroad fare and became a passenger. She thus alleges the manner of her injury: "And when said passenger train reached the defendant's passenger station in Alvarado, Johnson county, Tex., and had stopped at said station for the purpose of allowing passengers to disembark from said train, and from the coach in which she was riding, the plaintiff in the exercise of due care arose from her seat in said coach and passed out of the usual and regular door to said coach onto the platform thereof, and while she was attempting to pass down the steps of said coach from the platform, the lower and back portion of her dress and skirts caught upon one or more nails, screws, bolts, or other projection negligently allowed and permitted by the defendant to protrude above the surface of said platform, or to be attached to said coach, and the back part of her dress and skirts being thus caught and fastened by said projection, nails, screws, or bolts, caused the front and lower part of her dress and skirts to pull and jerk her feet from under her, and caused her to fall and to be thrown down

said steps from near the top thereof to the lower part of said steps, and the stool placed beneath the lower step and on the ground, and as a direct and proximate result thereof severely and permanently injured her." And thus charges the issue of negligence upon which the case was submitted: "That the defendant was guilty of negligence in allowing and permitting said nails, screws, bolts, or other projections to thus stand up and protrude above the surface of said platform or other part of said coach near the door and platform of said coach, and was guilty of negligence in permitting the same to remain in such condition."

Mrs. Davis testified that when the station of Alvarado was called she got up and started out, and got to the edge of the platform to make her first step, when her dress caught behind on something and jerked her feet from under her and threw her forward to the ground, from which she suffered injuries as related in her testimony. She said: "I do not know what my dress caught on; it caught on the platform somewhere. The skirt just jerked me and jerked my feet out from under me." She further testified that the obstruction tore her dress, which was exhibited before the jury, and which was thus described by her: "No one has worn this dress since that night. Prior to the time I fell from the train there was no holes in this dress. It is torn now crossways at the bottom of the placket and towards the left side. This tear is about eight inches to the left side of the placket; the tear extending from the bottom of the placket to the left. The hole at the bottom of the skirt is just over the hem and is about six inches in length and extends to the hem. Then it is torn slightly at the left side and not quite so much to the right. It is a hole your fist could slip through easily."

Other than the evidence of appellee quoted, there is none that corroborates her theory of the fall, save the testimony of Silas Bankston, who testified: That he was present and within some eight or ten feet of Mrs. Davis when she fell. That "when I first saw Mrs. Davis she was standing out on the platform between the coaches and started down; she took one step and started to take another one and fell. Her dress was pulled behind, and she fell. * * * Her dress swung right backwards from where she was getting off. I just happened to be noticing her dress. It drew in front of her and about her shoe tops." The brakeman, however, at the foot of the steps, a bus driver standing near, and some four or five other persons, also near by, either passengers or waiting on appellee to take passage, all deny seeing a screw, nail, or other thing upon the platform on which appellee's dress could have caught. These witnesses all believed themselves in position in which to have seen had there been anything of the kind. One or more of them testified specifically that they

thought they would have seen it had there been a projection, and all also denied that they observed or heard any tearing of appellee's dress, or any drawing of the dress from behind immediately preceding the fall; one witness giving it as her opinion that appellee either fell in a fit or voluntarily. All other observers save one thought her fall was with design.

Adopting, however, in deference to the verdict of the jury, appellee's own account of her fall, there yet remains the vital issue of whether appellant or its servants were guilty of negligence in permitting the platform or steps of the car in question to be in the condition alleged. Other than the mere fact that appellee's dress caught on "something," there is nothing in the evidence from which to draw an inference of negligence. The evidence shows that appellant's car inspectors at Cleburne inspected the car during the day preceding the occurrence; that the car was also inspected by the brakemen on the way to Dallas shortly afterwards, and yet later after the arrival of the car at Dallas, and yet again with particularity on the day after at Cleburne, when appellant's inspectors at that place were informed that appellee claimed to have been thrown by catching her dress on a screw or other thing on the platform. On none of these occasions was a defect or obstruction found as shown in the evidence. It is not contended that such inspectors were incompetent and that appellant was guilty of negligence in their employment or retention; nor is it contended that there is any evidence, save the mere fact that appellee's dress caught, that indicates carelessness on the part of any of appellant's inspectors, or of an insufficient inspection; nor is it contended that the inspections were not with sufficient frequency, nor that the car was old and worn, or defective in construction, and that appellant was guilty of negligence in this respect. Then in what respect was appellant negligent? The allegation, as will be seen from the quotation made, is that appellant was guilty of negligence in "permitting said nail, screws, bolts, or other projection to thus stand up and protrude above the surface of the platform or other part of said coach near the door, and was guilty of negligence in permitting the same to remain in such condition." But what proves it? As seen, inspection was made before the car was started on its way to Alvarado, and no screw, bolt, or other projection was apparent. The evidence shows that screws in the platform of like cars sometimes work out, but nothing is here shown when, if at all, the raised screw or other projection first protruded above the platform. For aught that appears in the evidence, it may have been but a moment before appellee appeared on the platform. It cannot be reasonably said that the brakeman or other employés were guilty of negligence in failing to discover the elevated screw when neither the appellee nor any of the descending or ascending passengers and other observers were able to observe it before or after the fall. None of them testified that he or she saw, tripped over, had clothing caught on, or otherwise discovered a protruding screw, or other thing upon which a dress could have caught. On the submission it was suggested in argument that appellee's dress may have extracted the screw, thus accounting for the failure of the witnesses to see it; but this is a mere conjecture. No loose screw was found on the ground or other place afterwards, nor does any witness indicate that there was a vacant hole in the platform. In brief, as stated, there is nothing in the evidence, which we have carefully considered, upon which to found the conclusion that appellant was guilty of negligence in the respect alleged by appellee, except the isolated fact that appellee's dress caught upon something and that she was thereby caused to fall.

[1] Numerous cases might be cited where an inference of negligence has been held to be justified from the very nature of the defect causing an injury, but this principle—that of res ipsa loquitur—has no proper application here. The defect, the cause of the fall in the instance before us, is not shown with any degree of certainty. That there was a loose screw or other projection on the platform of the car in question is a mere inference from the fact that appellee's dress caught, and to proceed yet further in the course of reasoning, and infer negligence in permitting the screw or projection to be there, seems to be adding presumption upon presumption, which the law never permits.

[2] One of the passenger witnesses, Baxter Walton, testified that he was in the middle of the platform and about three feet behind appellee and in position to have seen her dress if it caught anything as she got off; there being nothing to obstruct his view. He not only denied seeing any obstruction, but further testified that "another boy came out there where I was after I had gotten out there, and stood kinder behind me on the same platform that I was on. I don't know when he came out there, but he was standing there after she fell. I noticed him before any other passengers came along. I know he did not come up the steps and get on the train after the lady fell." Baxter Walton denied that he, himself, stepped on appellee's dress, but, so far as we can tell from the record "the boy" was not called as a witness. It is possible that either the boy or some other person not observed inadvertently stepped upon appellee's dress, and thus tore it and threw her. This, of course, is but a mere conjecture that will not be indulged by the law, but is given merely as illustrating that appellee's testimony accounting for her fall is not inconsistent with causes of her fall other than that of a projecting screw. And the rule undoubtedly is that, where the testimony shows that an accident is as reason-

ably attributable to a nonactionable cause as to one that is, the law will not uphold a conclusion in the nature of a mere guess in favor of the latter.

[3] While it was appellant's duty to exercise a very high degree of care to furnish and maintain suitable cars and platforms upon which passengers could move with safety, it was not an insurer in this respect, and the burden of proof rested on appellee to show such a state of circumstances as affords a reasonable conclusion of negligence as alleged. It is not sufficient for a plaintiff to show that the defendant may have been guilty of negligence; the evidence must point out that he was.

We conclude that in this appellee has wholly failed, and that such failure entitles appellant to judgment. Texas & P. Coal Co. v. Kowsikowsiki, 118 S. W. 829, s. c. 103 Tex. 173, 125 S. W. 3; St. Louis, S. F. & T. Ry. Co. v. Cason, 129 S. W. 397. Such being our conclusion, and it further appearing that this case had been twice tried and fully developed, we think in the interest of all parties that the litigation should be brought to an end. It is, accordingly, ordered that the judgment be reversed and here rendered for appellant.

Reversed and rendered for appellant.