## LUMPKIN v. TEXARKANA GAS & ELECTRIC CO.

(Court of Civil Appeals of Texas. Texarkana. Jan. 22, 1914.)

ELECTRICITY (§ 19*) — ACTION FOR DAMAGE — SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

In an action for damages for the death of a horse, claimed to have been caused by electricity passing from light wires, evidence *held* not to show that the horse's death was due to defendant's negligence in constructing and maintaining a ground wire.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

Appeal from Bowie County Court; Lee Tidwell, Judge.

Action by R. E. Lumpkin against the Texarkana Gas & Electric Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Mahaffey, Thomas & Hughes and R. D. Hart, all of Texarkana, for appellant. Glass, Estes, King & Burford, of Texarkana, for appellee.

WILLSON, C. J. On the morning of April 19, 1911, appellant found his horse dead under a shed where he had tied him the day before by means of a chain secured to a post which helped to support the roof of the shed. Appellant thought the horse was killed by electricity passing to him from appellee's line of electric light wires, as the result of negligence on its part in the construction and maintenance of said line of wires. On this theory he sought by his suit a recovery against appellee of $400 as the value of the horse. The trial court was of the opinion the testimony was not sufficient to support a finding in appellant's favor, and instructed the jury to return a verdict in favor of appellee. The correctness of the conclusion reached by the trial court is challenged by appellant.

It appeared from the testimony that the west side of the shed was on the east boundary line of the alley between Spruce and Oak streets in Texarkana. At a point in the alley about 6 inches from the nearest part of the shed and about 16 inches from the post to which the horse was tied, appellee had set a pole about 23 feet high, and on a cross-arm at the top thereof had strung electric light wires. Attached to the cross-arm where two metal boxes, called "lightning arresters," intended, a witness said, to take care of heavy currents on the light wires, by passing same over a wire, called a "ground wire," extending from the arresters down the pole to the top of a metal pipe about 20 inches high, set 3 inches from the pole, where it met another wire extending from the earth through the pipe. It was shown that these two wires where they met at the top of the pipe were not insulated, and were so twisted and soldered together as to leave about 5 inches of the end of one of them free and projecting towards the shed to a point only a few inches from it. The negligence charged against appellee was predicated on the manner in which the two wires were twisted and soldered together, leaving the end of one of them free and projecting as stated. It was shown that on the afternoon and night of the day before the horse was found dead the locality was visited by a severe electrical storm. Appellant's theory, it seems, was that electricity discharged during the storm and caught by the light wires passed from them to the ground wire, which, because of the projecting end at the top of the metal pipe, passed same to the shed instead of to the earth as it was intended to do. As we understand the testi-

mony, we think the most it can be said to have established with reference to the ground wire and the manner in which it was constructed was that it "was," using the language of the court in Southwestern Telegraph & Telephone Co. v. Morris, 106 S. W. 428, "a possible consequence of conducting" electricity from the light wires to the horse. There was testimony tending strongly to show that appellant's theory as to the manner in which the electricity was conveyed to the horse was incorrect. His witness Lovett, an expert electrician, it seems, testified, and his testimony was not contradicted by any other testimony in the case, as follows: "They," the arresters, "are put up to kill a certain amount of current or lightning or electricity. If there is an overcurrent it will pass on to these wires and into the ground. There is a fuse in the arrester. If there is an overcharge it will blow the fuse, and in that way we can tell whether there has been as overcharge of lightning or electricity coming down that wire. I examined those arresters right after the horse was killed. They did not indicate that there ever had been an overcharge coming down that wire. If electricity or lightning comes down on the end of a wire and then jumps from that to some place, we call that 'bursting' or jumping. When it does that it most always leaves a sign. That is the principle of an electric light; when it jumps from one point to another, that makes a light. If this wire came down that post part of the way and then stopped off, and lightning came down that wire, when it left the end of that wire it would burst and leave a sign. This little end of the wire sticking out there would have no effect at all, because that was a continuous wire into the ground." If it was true, as we understand the witness to have testified it was, that the fuse in the arresters must have been blown before electricity from the light wires could have passed to the ground wire, and if the fuse was not blown, it is clear that the horse was not killed by electricity conveyed over the ground wire from the light wires. The testimony quoted, and other testimony showing the absence of any mark on the shed, except the burned place on the post where the chain was secured, indicating that electricity had been conveyed thereto by the ground wire, and testimony showing that the fact that the wires were not insulated at the point where they were twisted and soldered together, could not have had anything to do with passing electricity therefrom to the shed, we think points strongly to the conclusion that the death of the horse was not due to negligence on the part of appellee in the construction and maintenance of the ground wire. We think the trial court did not err in peremptorily instructing the jury to find for appellee, and therefore affirm the judgment.