### TEXAS & N. O. R. CO. v. HANCOCK et ux.
### No. 3537.

Court of Civil Appeals of Texas. Beaumont.
Nov. 17, 1939.

Baker, Botts, Andrews & Wharton, of Houston, and L. V. Nelson and Duff & Cecil, all of Beaumont, for appellant.

O. M. Lord, of Beaumont, for appellees.

O'QUINN, Justice.

Appellees, Cecil Hancock and his wife, Minnie Hancock, sued appellant, Texas & New Orleans Railroad Company, seeking to recover damages for injuries to the eyes of Mrs. Hancock, alleged to have resulted from some foreign particles being blown in her eyes by compressed air negligently and carelessly released from appellant's engine by an employee of appellant who was in charge of the engine. Defendant answered by general demurrer, and general denial. At the close of the evidence appellant moved for an instructed verdict which was refused. The case was then tried to a jury upon special issues which were answered in favor of appellees, and judgment rendered in favor of appellees in the sum of $1,000. Appellees filed a remittitur of $500. Motion for a new trial was overruled, and appellant brings this appeal.

Appellant's first three assignments of error read:

First Proposition. "The court should not have refused to instruct the verdict for the defendant, as requested by the defendant, because the only ground of negligence plead by the plaintiffs was that the defendant's employees were negligent in releasing the air from the engine, and the only evidence introduced by the plaintiffs was the mere occurrence of an acci-

dent, which is no evidence of negligence, and the doctrine of res ipsa loquitur is not only not applicable to the facts, but is not relied upon by the plaintiffs in their pleadings."

Second Proposition. "The finding of the jury in response to special issue No. 3 to the effect that the defendant's employees were guilty of negligence in permitting air to escape from the defendant's locomotive is not supported by any evidence because the plaintiffs' proof only showed the mere occurrence of an accident, which is no evidence of negligence, and the doctrine of res ipsa loquitur is not only not applicable to the facts, but is not relied upon by the plaintiffs in their pleadings; and it is fundamental that a jury has no right to find negligence when there is no proof of any."

Third Proposition. "The court should not have submitted special issue No. 3 to the jury over the defendant's timely written objection that such issue had no support in the evidence, because the plaintiffs' proof only showed the mere occurrence of an accident, which is no evidence of negligence, and an issue of fact, in order to authorize its submission to the jury, must arise from both the pleadings and the evidence."

It is seen that each of the foregoing assignments raises the question of whether there was any evidence that appellant's employees in charge of the locomotive were guilty of negligence as alleged in releasing the air from the locomotive, and thus causing the alleged injury to Mrs. Hancock's eyes. Appellant insists that there was no such evidence, wherefore the judgment should be reversed and here rendered for it.

There is little or no dispute in the evidence. Mrs. Hancock testified in substance that on May 28, 1938, she was walking along the sidewalk on Park street about where it joins with Laurel street near the railway depot on the south side, going eastwardly down town. That there was a passenger train standing at the depot headed eastwardly—the same direction she was walking—with the engine or locomotive standing some 30 feet south of the street where she was walking. That when she got about even with the locomotive and about 30 feet from same on the left side of the locomotive she heard a "spewing" sound at the locomotive and a gust of air blew dust and sand into her eyes which

became so painful because of the foreign substances striking her eyes she turned and went back home. She said that the noise she heard was at the locomotive and the air came "just like a whirlwind." When asked to describe the noise she heard as to whether it was loud or shrill, she answered:

"No, I wouldn't call it no loud shrill—I don't know. I couldn't hardly describe just how it was, only I knowed it was a noise that was loud enough and strong enough that it just blowed the dust like a whirlwind and just covered things. It filled my eyes and I didnt remember more about the train."

"Q. You heard some noise and later on some dust got in your eyes. Was there a little whirlwind went across there at that time? A. I said this noise startled me, and it just puffed up the dust just like a whirlwind would.

"Q. And it came from the left side of the engine? A. From under it somewhere; it come from the engine."

R. A. Stulting, engineer operating the locomotive, testified substantially that the train and engine were equipped with automatic air brakes; that the valve to release air from the engine was located on the right side of the engine at the bottom of the running board about seven feet above the ground, and that when air was released from the engine it passed out through a half-inch hole and goes nearly straight down to the ground from the cab of the locomotive; that this half-inch hole for the escape of released air was underneath the running board on the right side; that the air when released could hardly be felt when it reached the ground.

"Q. Is it enough—say you have those brakes fully applied and you release them suddenly, would there be enough pressure come out of there to create a cloud of dust and blow gravel and stuff like that into the air? A. No, sir, it would not."

He testified that there was no way for the air to escape or be discharged from the left side of the engine, and that none did escape from the left side, that all air was discharged or released from the right side of the engine.

"Q. If any air come out of that engine on the left side, you don't know where it come from? A. I certainly do not, because I don't know of any air port on the left side of the engine.

"Q. If it came out of there with such force as to blow thirty feet and get it in somebody's eye you don't know anything about it? A. That would be an impossibility."

We have stated the material evidence as to the manner of the occurrence.

The only ground of negligence alleged by appellees as a basis for a recovery is: "Plaintiffs represent that at the same time plaintiff, Mrs. Minnie Hancock, was walking along the public sidewalk on Park Street on the west side thereof and when she reached a point about 30 feet from said locomotive engine one of the defendant's agents negligently and carelessly released and caused to be discharged a large quantity of compressed air from said locomotive engine directly towards plaintiff. That on account thereof a large quantity of dirt sand and other foreign substances was carried by the force of said compressed air, and struck the plaintiff in both eyes inflicting serious, painful and incurable injuries to both of plaintiff Mrs. Minnie Hancock's eyes."

In answer to special issue No. 1, the jury found that appellant's employee permitted compressed air to escape from the locomotive engine; and to No. 2, that the compressed air blew sand and grit into Mrs. Hancock's eyes, and to No. 3, that permitting the compressed air to escape from the locomotive engine was negligence on the part of appellant. An examination of the record shows no evidence to support the jury's finding of negligence. This finding was wholly without support in the evidence. Negligence cannot usually be inferred from the mere happening of an accident itself. In this case there is no question but that an accident occurred and that plaintiff Mrs. Hancock suffered injury. She was injured by some foreign object being blown into her eye, but its origin or source, at most, in the state of the record, is a matter of speculation. While the noise heard by Mrs. Hancock came from the vicinity of the locomotive engine, the evidence wholly fails to disclose the cause of same, or that it resulted from any negligence on the part of appellant's employee in charge of the engine. The mere happening of an accident, without more, affords no legal claim for damages. Negligence must be shown. Interstate Circuit, Inc., v. Le Normand, 5 Cir., 100 F.2d 160; Davis v. Castile, Tex. Com.App., 257 S.W. 870; Gulf C. & S.

F. R. Co. v. Shieder, 88 Tex. 152, 30 S.W. 902, 28 L.R.A. 538; Gulf, C. & S. F. R. Co. v. Davis, Tex.Civ.App., 161 S.W. 932, writ refused; Galveston, H. & S. A. R. Co. v. Landeros, Tex.Civ.App., 264 S.W. 524; Lone Star Brewing Co. v. Willie, 52 Tex.Civ.App. 550, 114 S.W. 186, writ refused. Furthermore, the undisputed evidence was that there was no escape vent on the left side of the engine for compressed air to pass out, but that the only such vent was on the right side of the engine, and that it pointed almost directly down to the ground. Mrs. Hancock was admittedly on the left side of the engine at a distance of some thirty feet away. The engineer testified that it was impossible for compressed air released on the right side of the engine to have passed around and to where she was at the time she says the air blew sand and foreign substances into her eyes. This would appear to be true.

The facts of the case appearing to have been fully developed, it follows that the judgment of the trial court should be reversed and here rendered for appellant, and it is so ordered.

Reversed and rendered.