**EMMONS v. TEXAS & P. RY. CO.**

No. 5704.

Court of Civil Appeals of Texas. Texarkana.

March 11, 1941.

Rehearing Denied March 27, 1941.

Lincoln & Harris, of Texarkana, for appellant.

Wheeler, Atchley & Vance, of Texarkana, for appellee.

HALL, Justice.

This suit was brought by appellant against appellee for damages resulting from the loss of his left eye, proximately caused by the alleged negligence of appellee. Appellant was an employee of appellee in the capacity of head brakeman on

one of its freight trains, and on the occasion of the alleged injury was riding on the engine where his duty called him. Appellant alleged that while he was crossing from the left to the right side of the engine in the performance of his duty, hot sand or other foreign matter was blown from the firebox of said engine, striking him in the left eye, destroying the sight thereof; that it was necessary for the operatives of the locomotive at regular intervals to throw sand into the firebox to be forced or sucked through the flues in order to clean them of accumulated soot. The sand was thrown into the firebox through an opening about four inches in diameter (hereafter referred to as the sand-hole) at the end of the firebox. The smaller opening or sand-hole had a cover secured by a spring, which, if in proper working order, would not permit hot sand from the firebox to be blown out into the cab of the engine. Appellant alleged further "that on the occasion referred to the particle of hot sand which was blown out of the firebox of said engine into the left eye of plaintiff (appellant) * * * was due to the negligence of defendant (appellee) and of its officers, agents and employees in that there was a defect and insufficiency due to their negligence, in said engine, appliances and machinery in the following particulars: * * *" (1) The door to the sand-hole did not fit securely; (2) the tension spring designed to hold the sand-hole door securely in place was defective and insufficient; (3) the sand-hole door was left open by the fireman or engineer without appellant's knowledge; (4) defective firebox door; (5) negligence of the operatives of said engine in not properly closing the firebox door; (6) failure of the fireman to cut off atomizer after engine had reduced speed on approaching the depot at Bonham and permitting same "to work too strongly and to force hot sand or other hot substances from the floor of said firebox and from other portions of said firebox through the door of said sand-hole and escape out into the cab of said engine;" (7) that the burner and atomizer were out of adjustment and not functioning properly. In the alternative, appellant alleged negligence generally, and sought a recovery under doctrine of res ipsa loquitur. It was averred that the damage resulting to appellant from loss of his eye was the direct and proximate result of defendant's negligence in one or more of the particulars set out above.

Appellee answered by general denial, and specially that appellant assumed the risks connected with and incident to his employment; that at the time of his injury both it and appellant were engaged in interstate commerce and that this cause of action is governed by the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

Trial was to a jury, and at the conclusion of appellant's evidence, appellee moved for a peremptory instruction, which was granted. In response to this instruction the jury returned a verdict for appellee, and judgment was entered accordingly.

■ Appellant's first three propositions are directed at the action of the trial court in peremptorily instructing the jury to return a verdict against him. The facts, of course, are undisputed, and must be taken as true in discussing these propositions. Appellant alone testified concerning the circumstances attending his alleged injury. His evidence is that he was head brakeman on one of appellee's freight trains, and was riding in the cab of the engine on the occasion of his injury. The engine was originally a coal-burner which had been transformed into an oil-burner. In the back end of the firebox (the end next to the operatives of the engine) there is a circular firebox door about two feet in diameter, in the center of which is a four-inch hole known as the sand-hole. This sand-hole is used by the fireman to sand out the flues of the locomotive. It is covered by a flap or door about one-half inch larger than the hole. This flap is held in place by a spring fastened to a bolt at its upper end. Normally this flap is held firmly over the sand-hole when closed, its purpose being to keep any foreign matter from being blown out of the firebox into the cab. The flap can be moved from side to side to permit sanding out the flues of the locomotive. This sanding out process is necessary in oil-burning locomotives to prevent the collection of soot in the flues, and is accomplished by holding a scoop of sand near the sand-hole, allowing the draft or suction from the exhaust of the engine to draw the sand into the firebox, through the flues, and out of the smokestack. This act is performed when the engine is laboring. It is never done when the engine is slowing down as

it approaches a station. Not all the sand fed into the sand-hole is drawn out through the smokestack. Some of it remains in the firebox and gets very hot, while other particles collect at the front end of the boiler directly under the smokestack. It is the fireman's duty to sand out the flues, to regulate the flow of fuel oil into the firebox, and to control the steam atomizer which breaks up and scatters the fuel oil throughout the firebox. The oil burner and atomizer are attached together and affixed to the front end of the firebox near the bottom of same. The atomizer exerts its force toward the back end of the firebox. The force of the atomizer is increased or decreased proportionally with the flow of fuel oil into the firebox. A reduction in the power of the engine requires a proportionate reduction in the force of the atomizer or a backfire might occur, which would blow foreign matter, if any were loose in the firebox, back through the sand-hole into the cab. On approaching the depot at Bonham, with the speed of the train reduced to four or five miles per hour, appellant, in the performance of his duty, started from the left side to the right side of the engine cab, and as he got about even with the sand-hole, and with his left eye next to it, heard a clattering sound coming from the door covering the sand-hole and some hot substance (later found to be a grain of sand) struck him in the left eye. The sand-hole was about three feet from his left eye when the accident occurred. Appellant had on other occasions observed the vibration of the sand-hole cover or flap and concluded that the "tension spring wasn't stout enough to hold it, the tension spring that holds it in place." At the time appellant received the injury to his eye, he testified that he was crossing the engine cab from left to right:

"Q. As you crossed over, did anything happen to you? A. Yes, sir; a piece of hot sand hit me in the left eye.

"Q. Where did that grain of sand come from? A. From the firebox.

"Q. How do you know it came from the firebox? A. Because it was hot.

"Q. Was there any other place it could have come from and be hot? A. No other place.
* * *
"Q. When he (the engineer) released the throttle, state whether or not the fireman reduced the atomizer any. A. No,

sir; not until after the door on the sand-hole went to vibrating.

"Q. And at the time that this particle got in your eye, had or not the atomizer been reduced at that time? A. No, sir.

"Q. It had not. Was there any noise of any kind whereby that could be determined? A. That flap vibrating.

"Q. The noise of the engine? A. The roar of the engine.

"Q. Can you tell from the roar of the engine whether the atomizer is on full or has been reduced? A. You can tell when the engineer released his throttle if the fireman don't close his atomizer, by the roar.

"Q. You can tell by the roar? A. Yes, sir."

Other evidence offered by appellant was to the effect that other parts of the engine in the cab such as the fire door, sand-hole door, valves, and steam pipes get hot. Some of them "awfully hot," and that it is impossible to keep sand from the sand-box and the elements from settling on the engine. The engine cab is open at the rear and has windows in front and on the side of the engineer's and fireman's seats. The wind was not blowing on this occasion. The head brakeman while riding in the engine sits on the seat with the fireman.

Do these undisputed circumstances establish the causal connection between appellee's alleged wrongful acts or omissions and appellant's injury? After a careful study of the record herein we have concluded that they do not. There must be some reasonable and probable connection between appellant's injury and the negligence charged against appellee. It must not be left to pure conjecture. Western Telephone Corp. of Texas v. McCann, 128 Tex. 582, 99 S.W.2d 895, and the numerous authorities there cited and approved, including Southwestern Tel. & Tel. Co. v. Morris, 106 S.W. 426, and Lumpkin v. Texarkana Gas & Elec. Co., 164 S.W. 435, both by this court. The only circumstances relied upon by appellant to show negligence either on the part of the fireman in failing to reduce the force of the atomizer or appellee's failure to maintain a spring "stout enough" to hold the sand-hole door fast, was the roar of the engine and the clattering or vibration of the sand-hole door heard by him at the time of his injury. From these circumstances appellant concluded that the spring holding

the sand-hole door was too weak and that the fireman failed to cut off the atomizer. It must be remembered that the mere fact that appellant received an injury to his eye does not establish negligence against appellee. Gulf, C. & S. F. Ry. Co. v. Shieder; 88 Tex. 152, 30 S.W. 902, 28 L.R.A. 538; Galveston, H. & S. A. Ry. v. Landeros, Tex.Civ.App., 264 S.W. 524; Phillips v. Citizens' National Bank, Tex.Com.App., 15 S.W.2d 550; Texas & N. O. Ry. v. Hancock, Tex.Civ.App., 134 S.W.2d 408; Pennsylvania Ry. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819. The only reason appellant "knows" that the sand which struck him in the eye came from the sand-hole is the fact that it was hot. The circumstances in this case raise a suspicion, and we might, by conjecture, reach the conclusion, as the jury might have done, that the fireman negligently failed to cut down the force of the atomizer when the engineer reduced the speed of the train; that this act caused a backfire in the firebox, which on account of the weakened condition of the spring holding the flap over the sand-hole, permitted grains of hot sand to escape and be blown into the cab of the engine; that one of these grains of hot sand struck appellant in the eye, causing the injury thereto. But neither we nor the jury nor the court below are permitted to conjecture and speculate in · matters of this character. In Southwestern Tel. & Tel. Co. v. Morris, supra [106 S.W. 428], Judge Levy' in discussing the same proposition of law involved here, stated: "Was the horse killed by electricity which came from the wires, or directly by a bolt of lightning from the clouds? If the same bolt of· lightning struck both the telephone line and the horse, but if the wire did not control the path of the bolt from the clouds to the earth so as to be the proximate cause of the bolt's striking the horse, the appellant as a matter of law would not be liable. *It is not sufficient that the wire was a possible consequence of conducting the lightning to the horse.*" (Italics ours.) So in this case, it is not sufficient to show that the grain of sand found in appellant's eye could have been blown by the force of the atomizer through the loosely-fastened sand-hole door. But was it reasonably probable that it was so blown? It must be observed that there were several exposed parts of the locomotive firebox which were hot; and "sand settled on the engine." Also the sand fed through the sand-hole

was carried back over the engine' and cab from the smokestack by the exhaust. These conditions are not made the basis of negligence, yet, in our opinion, it is possible, that the grain of sand which struck appellant in the eye came from one of these hot portions of the engine or the exhaust as from the sand-hole. "If the injury may have resulted from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result; and, if the evidence leaves it to conjecture, the plaintiff must fail in his action." Warner v. St. Louis & M. Ry. Co., 178 Mo. 125, 77 S.W. 67, 70; Caudle v. Kirkbridge, 117 Mo.App. 412, 93 S.W. 868; Prest-O-Lite Co. v. Skeel, 182 Ind. 593, 106 N.E. 365, Ann.Cas. 1917A, 474. Furthermore, the "fact of causal connection between an alleged negligent act or omission and an injury can no more be presumed than can the act or omission itself." Texas & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049, 1052. Chief Justice Conner in Gulf, C. & S. F. Ry. v. Davis, Tex.Civ.App., 161 S.W. 932, 934, writ refused, in discussing negligence of the railway company as inferred from the ·injury to a passenger, stated: "That there was a loose screw or other projection on the platform of the car in question is a mere inference from the fact that appellee's dress caught, and to proceed· yet further in the course of reasoning, and infer negligence in permitting the screw or other projection to be there, seems to be adding presumption upon presumption, which the law never permits." See also Houston Fire & Casualty Ins. Co. v. Biber,· Tex.Civ.App., 146 S.W.2d 442; Galveston, H. & S. A. Ry. v. Fred, Tex. Civ.App., 185 S.W. 896; Sutton's Administrator v. Louisville & N. Ry., 168 Ky. 81, 181 S.W. 938. There must be more than "a scintilla of evidence, or a mere surmise" connecting the alleged negligent act with' the injury before the trial court will be authorized to submit the case to the jury. In this connection we think it proper to quote from the well-considered opinion of Judge Denman in Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063, the following: "From a careful examination of the cases, it appears (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact

sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force. If it so determines, the law presumes that the jury could not 'reasonably infer the existence of the alleged fact,' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty, or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining as a question of law whether the testimony establishes more." Galveston, H. & S. A. Ry. v. Faber, 77 Tex. 153, 8 S.W. 64; Gulf, C. & S. F. Ry. v. Mannewitz, 70 Tex. 73, 8 S.W. 66. These propositions are overruled.

By his 4th proposition appellant asserts that the evidence was sufficient under the doctrine of res ipsa loquitur to warrant a submission of the case to the jury. Res ipsa loquitur is a rule of evidence and is said to be applicable " * * * Where the particular thing causing the injury has been shown to be under the management of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care." Scott v. Docks Co., 3 Hurl. & C. 596. The locomotive was under the exclusive control of the engineer and fireman at the time appellant received his alleged injury. The undisputed evidence as shown in our discussion of propositions 1, 2 and 3, discloses that it is as probable that appellant's injury was due to an act for which appellee was not negligent as to one for which it was negligent. Under such circumstances it is held that when "the accident may have happened as the result of one of two or more causes, and it is not more reasonably probable that it was due to the negligence of the defendant than to any other cause, the rule of res ipsa loquitur does not apply." Davis v. Castile, Tex.Com.App., 257 S.W. 870, 872; Klein v. Beeten, 169 Wis. 385, 172 N.W. 736, 5 A.L.R. 1237. This proposition is overruled.

By propositions 5, 6 and 7, appellant asserts that the trial court committed reversible error in refusing to permit him to testify while a witness in his own behalf "that when he had previously reported this clattering sound and the weakness of the tension spring (holding the door over the sand-hole) it would not be fixed by defendant, and that his report had been made to the engineer and fireman; that a few days before the grain of hot sand got in his eye, the sand-hole door was out of fix, and that he called it to the attention of the fireman and the fireman called it to the attention of the engineer, and the engineer at that time stated that he would report it, but that it would not do any good to report it, because it had been reported so many times before and that it had not been fixed." It was contended that this testimony was admissible to establish negligence of appellee in permitting the sand-hole door to remain out of repair. Granting as true the fact that appellee was negligent in permitting the sand-hole door to continue out of repair, still we think under the undisputed facts of this case appellee would not be liable for the reasons heretofore pointed out; that is, that it is no more reasonably probable that the hot sand which struck appellant in the eye came from the sand-hole door than from any other hot, exposed part of the back end of the locomotive or from the exhaust. So the error, if any, in excluding this evidence, was harmless. These propositions are overruled.

By propositions 8 and 9 it is asserted that the trial court erred in sustaining objections to certain testimony of appellee's witness Heath. We are not advised by either a bill of exception or the statement of facts the nature of this proffered testimony. Therefore these propositions present no error. Motion was filed in this court by appellant on November 1, 1940, seeking a writ of certiorari to the 5th District Court of Bowie County "directing it to perfect or cause to be perfected the statement of facts on file therein," by adding thereto the testimony made the basis of these propositions. The statement of facts sought to be corrected was filed in this court July 3, 1939. On July 18, 1940, this cause was set for submission November 7, 1940, and the interested parties were immediately notified. On October 7, 1940, appellant filed his briefs herein. Under the authority of Barboza v.

172

Service Mutual Ins. Co. of Texas, Tex. Civ.App., 125 S.W.2d 1095, writ dismissed, and cases therein cited, the motion is overruled.

The judgment of the trial court is. affirmed.