### TALLEY et al. v. BASS–JONES LUMBER CO.

### No. 6050.

Court of Civil Appeals of Texas.
Texarkana.

June 22, 1943.

Rehearing Denied July 1, 1943.

Jones & Jones, of Marshall, for appellants.

Lightfoot, Robertson & Gano, of Fort Worth, Brachfield & Wolfe, of Henderson, and Stinchcomb, Kenley & Sharp, of Longview, for appellee.

HALL, Justice.

Appellants, the surviving wife, child, and mother and father of Major Talley, deceased, instituted this suit against appellees for damages arising from the alleged negligent death of Major Talley while engaged in fighting fire at appellees' sawmill near the city of Kilgore. Appellants alleged several grounds of negligence, among which was the averment that appellees, Bass-Jones Lumber Company, caused or permitted some of the guy wires attached to the smoke stack, which fell during the fire injuring Major Talley, to be tied to inflammable building or buildings. Upon this single alleged ground of negligence the jury found in favor of appellants. No other ground of alleged negligence will be referred to or discussed in this opinion.

Appellees answered by general denial, special denial of each alleged ground of negligence charged against them, and alleged that the smoke stacks erected at their

sawmill were properly constructed and installed; that Major Talley, deceased, assumed the risks incident to the fire, was guilty of contributory negligence, and that his death was the result of an unavoidable accident.

Trial was to a jury upon special issues, and the verdict was favorable to appellants. Upon motion of appellees, judgment was rendered for them by the trial court non obstante veredicto.

Appellants' point B is: "The trial court erred in entering judgment for appellees in disregard of the jury's findings to issues Nos. 3, 4 and 5, that the appellees negligently caused the guy wires on the smoke stack which fell on deceased to be attached to inflammable buildings, and that such negligence proximately caused the death of the deceased."

Major Talley was fatally injured by a falling smoke stack while fighting fire at appellees' sawmill on August 29, 1941. Talley was employed by the city of Kilgore to operate a mechanical street sweeper. He was also a member of the volunteer fire force of said city but received no compensation from the city for such latter position. He was required to answer fire calls within the city limits if not busy with his duties of sweeping the streets. The Bass-Jones Lumber Company is situated just outside the city limits of Kilgore to the south on the east side of the Kilgore-Henderson highway. On the date of Talley's injury, the Kilgore Fire Department received and answered a fire call to said Lumber Company with one of its fire trucks. Talley, as a member of the volunteer fire force, also answered the call and assisted the other members of the Fire Department in fighting the fire. While so engaged in the performance of such work, one of the smoke stacks at appellees' mill fell, striking Talley and fatally injuring him. Neither the Fire Department nor Talley was required to answer calls outside the city limits, but it was the practice of the Fire Department and Talley to answer such calls. On two occasions prior to August 29, 1941, the Fire Department of Kilgore had been called to the Bass-Jones Lumber Company to extinguish a fire. Talley was present on both these occasions. The Lumber Company gave the firemen a check for $150 in appreciation of the aid rendered on those occasions. This fund was divided among the members of the Kilgore Fire Department, Talley partici-pating in the division. The Lumber Company made a donation of $25 to the members of the Fire Department shortly after the August 29th fire.

It is strenuously insisted by the appellants that the evidence in the record is amply sufficient to support the verdict of the jury with respect to appellees' negligence in guying one of its smoke stacks to inflammable material and that such negligence was the proximate cause of Talley's death. In our discussion of this point we shall assume that Talley was an invitee upon the premises of appellees and that appellees owed him the duty of exercising ordinary care for his safety. The facts are that Talley was an experienced fireman, having had some six or seven years' experience with the Kilgore Fire Department. He had attended special drills of four hours each month "on the matter of how to handle a fire and the dangers incident to it." It was testified by Hale, Assistant Fire Chief, "that the work of a fireman is a hazardous work, dangerous," that "you are taking chances all the time, when you attend a fire, there is always some danger." Both McBride, the Fire Chief, and Hale, Assistant Chief, were present and directed the firemen in fighting the fire. Talley and some other persons were manning a hose directed to the northeast corner of the main sawmill shed. There were three smoke stacks attached to as many boilers. Two of these were 75 or 80 feet in height, the third was somewhat shorter. All three were bolted to the top of the boilers and were each guyed with six guy wires. Three of the guy wires were fastened to the stacks about 30 feet above the boilers, and the other three were fastened some 20 feet higher. These guy wires were distributed equidistant around the stacks, their lower ends (as shown by appellees' testimony) were attached to railroad rails driven into the ground. This fact, however, is disputed by appellants, one of their witnesses stating that he traversed the east, south, and west sides of the mill grounds and did not notice any railroad rails driven into the ground with guy wires attached to them; and by another witness to the effect that he saw one guy wire attached to a 2x12 timber at the west end or northwest corner of the fuel house. During the progress of the fire, all three smoke stacks fell, all falling to the northeast. The first two fell as result of the fire while the third

was felled by the firemen. Talley was fatally injured by the falling of the first stack, referred to hereafter as stack No. 1.

There is some dispute in the evidence with respect to warning given Talley of the danger from stack No. 1. The testimony of appellees' witness is that Talley was warned at least twice of the danger existing with respect to stack No. 1 in time for him to have reached a place of safety. The testimony of the fire chief is somewhat to the contrary. All the parties working on the hose with Talley did reach a place of safety. When stack No. 1 was actually falling, Talley attempted to get out of the way but ran in line with it and was struck down by the extreme end of same. The smoke stacks were in plain view of Talley and the other firemen. They were engaged in fighting a large and dangerous fire which enveloped the mill shed, fuel house and engine room, out of which the smoke stacks projected. Some of the guy wires from these smoke stacks to their fastenings toward the south and southwest passed directly over the mill shed and about six or seven feet above same. The presence of the smoke stacks and the danger incident to their falling as a result of the fire must have been apparent to Talley and the other firemen, they being experienced in such work. Under such circumstances, Talley and the other firemen working with him were charged, as a matter of law, with the knowledge of the dangers arising from and incident to the smoke stacks. In other words, an experienced fireman in fighting a fire, as a matter of law, is guilty of contributory negligence in failing to exercise ordinary care for his own safety against those dangers which are patent, and this is true whether he be an invitee, as here, or a mere licensee. United Gas Corp. v. Crawford, Tex.Sup., 172 S.W.2d 297. In Buckeye Cotton Oil Co. v. Campagna, 146 Tenn. 389, 242 S.W. 646, 647, the Supreme Court of Tennessee had before it a case similar in point of fact to the case at bar. There a long, heavy seed pipe reaching from one seed house to another was resting upon a shed which was burning at the time the Memphis Fire Department reached the scene. One of the firemen was fatally injured by the falling shed. The shed was located outside the city limits of Memphis. After holding the deceased fireman to be an invitee, the court said:

"There is a difference, however, between inviting a friend into one's residence socially or inviting a customer into one's place of business to trade, and in inviting experienced firemen to help put out a fire in a burning building.

"A burning building is not a safe place, and entry into such a place is attended with known dangers. Such dangers are particularly within the knowledge of firemen, who for years have encountered them daily.

"When these firemen accepted the invitation of plaintiff in error and went to its premises to fight the fire, they took certain chances. When they went under the shed of the burning seed house we think they took the chance of the shed falling as the ordinary consequence of the fire."

We shall not quote further from the above opinion, but cite it in its entirety as controlling in the disposition of this case. The only other case we have found holding that a fireman called by the owner of a building outside the limits of a municipality to be an invitee, is Clinkscales v. Mundkoski, 183 Okl. 12, 79 P.2d 562, by the Supreme Court of Oklahoma. That case, however, is not in point on the issue of negligence. There the danger was a latent or hidden one (gasoline in drums), and the facts are that the owner of the building did not inform the fireman of the presence of the gasoline in the drums, but, on the contrary, told him that the drums did not contain gasoline, and by such misstatement induced him to go nearer the drums to put out the fire in the barn where grain was stored. An explosion occurred, fatally injuring the fireman. It was held that such facts stated a cause of action.

But it is insisted by appellants that appellees' act in fastening one of the guy wires to a 2x12 timber amounted to negligence and that such negligence was, as found by the jury, the proximate cause of Talley's death. Appellants' witness Findley testified that sometime before the fire he was hauling sawdust from appellees' saw mill to the city of Kilgore, and that in securing the sawdust he encountered a guy wire attached to a 2x12 timber at the west end or northwest corner of the fuel house. He did not know to which one of the three smoke stacks the wire was attached. Glenn, another witness for appellants, testified that he traversed the saw-

mill grounds on the east, south, and west sides, and he did not notice any railroad rails driven into the ground with guy wires attached to them. This witness also testified that at the time stack No. 1 fell he saw the guy wires attached to it sail through the air from the direction of the southwest corner of the mill shed as it collapsed. This was about five minutes before stack No. 1 fell. The evidence shows without dispute that the fuel house was joined to the boiler room and extended west along the north side of the long mill shed, which would place the northwest corner of the fuel house and its west end (where witness Findley says a guy wire was attached to a 2x12 timber) either slightly northwest or west of all three of the smoke stacks. If it be conceded that this guy wire was attached to stack No. 1 and that it was released by the fire, then it seems inescapable that the stack would have fallen to the east or southeast—the opposite direction from the released tension. But it is undisputed that stack No. 1 fell in a northeast direction. And it is also undisputed that at least two guy wires attached to stack No. 1 extended to the south and southwest and passed directly over the mill shed about six or seven feet above its roof. After the fire these guy wires, the testimony shows, were found to be burned in two at a point directly above the mill shed with their respective ends still attached to the railroad rails and stack No. 1. This would indicate that the guy wires which released stack No. 1 were burned in two by the fire which consumed the mill shed, and for which occurrence appellees would not be negligent. So it is equally as probable that the falling of stack No. 1 and the consequent death of Talley was caused by the severing of the guy wires by the fire as that the occurrence was produced by a guy wire being attached to the inflammable 2x12 timber at the west end or northwest corner of the fuel house. In such circumstances, the jury may not be permitted to speculate as to which of the two causes was the proximate cause of Talley's death.

In 45 C.J. p. 1269, it is said:

"Upon the other hand, the causal connection between defendant's act or omission and the injury must not be left a matter of surmise or conjecture, and cannot be established by evidence which is merely consistent with or indicates a mere possibility or probability thereof, as be evidence which merely shows two or more possible causes of the injury, for not all of which defendant is responsible; or which leaves it a matter of speculation or conjecture as between such causes; or which is equally consistent with the theory that the injury resulted from a cause for which defendant is not responsible; or which is equally balanced or permits of equally reasonable inferences or equally permissible conclusions as between a cause or causes for which defendant is responsible and a cause or causes for which he is not responsible; or where the injury may with equal fairness or probability or likelihood or as reasonably or with greater probability be attributed to a cause which will excuse defendant as to a cause which will subject him to liability." Western Telephone Corp. of Texas v. McCann, 128 Tex. 582, 99 S.W.2d 895, and authorities there cited and approved, including Southwestern Tel. & Tel. Co. v. Morris, Tex.Civ.App., 106 S. W. 426, and Lumpkin v. Texarkana Gas & Elec. Co., Tex.Civ.App., 164 S.W. 435, both by this court; Emmons v. Texas & P. Ry. Co., Tex.Civ.App., 149 S.W.2d 167, also by this court; Gulf, C. & S. F. Ry. Co. v. Davis, Tex.Civ.App., 161 S.W. 932, writ refused.

Moreover, the witness Findley testified positively that he did not know to which of the smoke stacks the guy wire was attached which he encountered in the fuel house. So far as this record reveals, it might have been fastened to one of the stacks which did not injure Talley. It is a fact that stack No. 1 fell first, fatally injuring Talley, and shortly thereafter stack No. 2 fell. Both of these stacks fell as a result of the fire. The circumstances related by witness Glenn tended to negative the conclusion that the guy wire fastened to the 2x12 timber was attached to smoke stack No. 1, for the reason that it was caused to fall by the release of guy wires which sailed over the southwest corner of the saw mill shed some 30 or more feet south of the fuel house where Findley said a guy wire was attached to a 2x12 timber. Appellants' point B is therefore respectfully overruled.

The conclusions reached above render unnecessary a discussion of the other points brought forward by appellants.

For the reasons indicated above, the judgment of the trial court is affirmed.